Zini *v.* First Natl. Bank in Little Rock.

5-1398                                    307 S. W. 2d 874

Opinion delivered December 2, 1957.
[Amended on motion of attorney December 23, 1957.]

*Terral & Rawlings,* for appellant.

*Mehaffy, Smith & Williams,* for appellee.

GEORGE ROSE SMITH, J.   This is a suit brought by the appellee, as guardian of the estate of James A. Counts, incompetent, to set aside a deed by which Counts conveyed a house and lot in Little Rock to the appellant, Angelo Zini. The chancellor, finding that Counts was mentally incompetent when the deed was executed, entered a decree canceling the conveyance.   Zini contends that the finding of incompetency is against the weight of the evidence and, alternatively, that the court erred in fixing the amount owed to Zini upon cancellation of the deed.

On January 30, 1947, Zini conveyed the property in question to U. C. Butler and his wife, the deed reserving a vendor's lien for the unpaid purchase price.   On November 4, 1948, the Butlers sold the property to Counts for $3,500.   In this transaction Counts paid $500 in cash, assumed the obligation to Zini in the sum of $1,926.44, and executed a note for the balance of $1,073.56, for which the Butlers retained a vendor's lien.   Counts was adjudicated an incompetent by the Pulaski probate court on November 23, 1949, and was committed to a Veterans Administration hospital for treatment.   His condition improved, and he was permitted to leave the hospital three weeks later.   After his release from the hospital Counts became delinquent in his payments upon the property (which was not his home).   On March 11, 1950, Counts conveyed the land to Zini in satisfaction of the latter's claim, which then amounted to $1,894.64.   Zini later obtained a release of the Butlers' lien by paying them $300.   The appellee bank was appointed guardian in June, 1951, and filed this suit in August, 1956.

The evidence bearing upon Counts's mental condition on March 11, 1950, presents a difficult question of fact. Counts was born about 1913 and seems to have been mentally normal until he broke down in combat during World War II.  He was then treated for a nervous disorder and eventually received an honorable discharge from the Army.  Upon his return to civilian life in 1945 he obtained work in the office of the Veterans Administration.  His nervousness increased, however, and he

spent six weeks in a mental institution in the summer of 1946, leaving against medical advice.

According to Mrs. Counts, her husband's conduct before and after the execution of the deed in question was often that of a deranged man. She says that he shot several dogs that were chasing his hogs and threatened to shoot the dogs' owner, that he tried to break into the postoffice to get his mail, that he ordered a hundred lizards with which to start a lizard farm under the house, that he built fires in the corners of the house and sawed up the furniture for firewood, that he slept in the yard about half the time, and that he carried ice picks, butcher knives, and other weapons, because he thought everyone hated him.

The only medical testimony in the record confirms the view that Counts was insane. His family physician testified that he had never seen Counts when he was mentally competent. A qualified psychiatrist, Dr. Kolb, who was employed by the Veterans Administration, observed Counts from time to time over a period of nine years beginning in 1947. Dr. Kolb concedes that Counts is not mentally defective in the sense of being an idiot or a moron. It is, however, his opinion that Counts is suffering from paranoiac schizophrenia, which so affects his judgment that he is incapable of considering the consequences of a transaction such as the execution of a deed or a will. Less than four months before the conveyance to Zini Dr. Kolb believed that Counts was potentially dangerous and recommended that he be adjudged incompetent and be confined.

On the other hand, the appellant shows that during the years we have mentioned Counts engaged in many activities with at least the appearance of rationality. It is shown that Counts bought and sold property, executed notes and mortgages, obtained an appointment as a notary public and acted in that capacity, employed an attorney and discussed a proposed lawsuit with apparent understanding, and made brief, unsuccessful attempts to earn a living by mowing lawns and by selling vegetables at a roadside stand. A number of lay witnesses

who knew Counts at the time express the opinion that he was sane.

The decisive question is whether Counts was able to comprehend the nature and effect of his deed to Zini. *Powers* v. *Chisman,* 217 Ark. 508, 231 S. W. 2d 598. We are unable to say that the chancellor's answer to this question is contrary to the weight of the evidence. That Counts was afflicted with a serious mental disorder is convincingly established by the testimony of his wife, by the medical evidence, and by the fact that he was judicially declared incompetent a few months before the deed was signed. In a case not unlike this one we held that a man was incompetent even though he appeared to be sane and had succeeded in obtaining substantial loans from banks. *First Natl. Bk. of Rogers* v. *Tribble,* 155 Ark. 264, 244 S. W. 33. In the case at bar it is possible to reconcile the testimony, for, as we understand Dr. Kolb's diagnosis, Counts was able to engage in the various transactions proved by the appellant without comprehending their consequences. This was the view taken by the chancellor, and the record does not warrant our saying that he was wrong.

The other issues are comparatively simple. Zini insists that the appellee was guilty of laches in failing to bring the suit until 1956. Here the statutory period of limitations cannot be used as a yardstick, the rule being that the appointment of a guardian does not set the statute in motion when there is in effect a saving clause, such as Ark. Stats. 1947, § 37-226, permitting the action to be brought within a certain time after the removal of the disability. *Funk* v. *Wingert,* 134 Md. 523, 107 A. 345, 6 A. L. R. 1686. Zini did not record his deed from Counts until 1955, and there is nothing to suggest that the guardian had notice of the conveyance until about eighteen months before the suit was filed. During this period there was no change in circumstances that would make the granting of relief inequitable.

The chancellor adjusted the accounts by charging the guardian with the amount of the principal debt to Zini, with Zini's expenditures for taxes and maintenance, and

with the $300 that Zini paid for the satisfaction of the Butlers' lien. Zini in turn was charged with the sums that he was shown to have collected as rent and as consideration for the granting of options. This statement of the account is essentially correct, for Zini must be regarded as a mortgagee in possession. *Mo. Pac. R. Co.* v. *Frost,* 146 Ark. 472, 225 S. W. 645; *Holcomb* v. *Bowe,* 154 Ark. 543, 243 S. W. 803; Hughes, Arkansas Mortgages, § 525. It is true that Zini might have been charged with the fair rental value of the land instead of with the sums actually collected, but the trial court's procedure is not questioned by cross appeal.

We find no merit in Zini's contention that he is entitled to recover the face amount of the Butler incumbrance rather than the lesser sum that he paid for its discharge, for that holding would result in Zini's being unjustly enriched. See Rest., Restitution, § 43, Comment *d.*

The appellant is right, however, in his assertion that the chancellor erred in refusing to allow interest upon the principal debt and upon the other items of debit and credit that make up the account. *Mo. Pac. R. Co.* v. *Frost, supra.* Interest on the principal debt should be awarded at the contractual rate of six per cent, for it does not appear that Zini ever exercised his option to declare the entire debt due, in which event alone the note provided for interest at ten per cent per annum. Interest on the other items in the account should be awarded at the legal rate of six per cent.

With respect to the allowance of interest the decree is reversed and the cause remanded.